# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 11 C 2577 | DATE | February 22, 2012 |
| CASE TITLE | *Reardon v. AT&T* | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the defendant's motion for summary judgment [20-1] is granted. The clerk is directed to enter a Rule 58 judgment in the defendant's favor and terminate this case from the court's docket.

■[ For further details see text below.]

00:00

## STATEMENT

The plaintiff, Charles Reardon, has sued SBC Global Services, Inc. ("SBC") alleging race discrimination and retaliation under Title VII. SBC moves for summary judgment on the ground that the plaintiff has released all of his claims. For the reasons stated below, the motion is granted.

**Facts**

Prior to setting forth the facts, the court notes that the plaintiff, who is represented by counsel, often fails to cite to any portion of the record when disputing the defendant's statements of fact, as required by Local Rule 56.1(b)(3)(B) (requiring "a response to each numbered paragraph in the moving party's statement, *including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon . . . .*") (emphasis added). Accordingly, any of the defendant's facts that are properly supported and not disputed by the plaintiff with specific reference to the record will be deemed admitted. *Ebrahime v. Dart*, 2012 WL 33053, at *2 (N.D. Ill. Jan. 6, 2012) ("If the responding part[y] fails to comply [with the local rules], its additional facts may be ignored, and the properly supported facts asserted in the moving party's submission are deemed admitted."). Moreover, facts not relevant to the resolution of the instant motion have not been included.

With this in mind, the undisputed material facts are as follows. Reardon began working for SBC on March 7, 2007. On May 14, 2008, Reardon filed a charge of discrimination with the EEOC, checking the "race" and "retaliation" boxes as the basis for his charge.

On December 4, 2008, SBC notified Reardon that he had been designated for a company-initiated involuntary termination of employment. Reardon contends that he was chosen for the termination in

retaliation for having filed the EEOC charge. As part of his termination, SBC provided Reardon, on December 4, 2008, with a document entitled "General Release and Waiver AT&T Inc. Severance Pay Plan." The General Release, which defines SBC as a "Participating Company," includes the following statements on the first page:

> This General Release and Waiver is an important document, which you should examine carefully before signing. You are encouraged to seek the advice of anyone you need in order to make an informed decision, including your financial advisor. You should consult with an attorney before signing this General Release and Waiver.

The General Release further states:

> I understand that there are various local, state and federal laws that govern any employment relationship with the Participating Company and/or prohibit discrimination on the basis of age, color, race. gender, sexual orientation, marital status, national origin, mental or physical disability, religious affiliation or veteran status. Such laws include, but are not limited to, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Americans with Disabilities Act. By signing this General Release and Waiver, I intend to give up any rights I may have under these or any other laws with respect to my employment and to the termination of my employment with the Participating Company.

Further, the General Release provides that:

> In exchange for the Plan Benefits described under Section III of this General Release and Waiver, I hereby release the Plan, AT&T and the Participating Company and their current and former parents, subsidiaries, affiliates successors or assigns (the "Companies"), and the Companies' current and former officers, directors, employee benefit plans and employees and related parties (Released Parties) from any claims, liabilities, demands or causes of action, whether for discrimination, breach of contract, or any other claim, including but not limited to claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, Family and Medical Leave Act (FMLA), the Worker Adjustment and Retraining Notification (WARN) Act, and the Fair Labor Standards Act (FLSA), that I may have or claim have had as of or prior to the date of the General Release and Waiver against any Released Parties based on my employment with the Companies or the termination of that employment . . . .

Finally, the General Release states that:

> By signing below, I acknowledge that my election to accept the benefits of the Plan, and to release any claims described above, is knowing, free and voluntary and will become irrevocable seven calendar days after I sign this General Release and Waiver.

> In addition, I hereby acknowledge by my signature that I have carefully read and fully understand all of the provisions of this document. I have been encouraged to consider this document carefully and to seek legal and financial advice before signing it.

Reardon's last day on the SBC payroll was February 2, 2009, and on February 12, 2009, he executed

the General Release. In consideration for signing the release, SBC paid Reardon $5,664 subject to all withholdings. In March 2009, SBC issued to Reardon a check in the amount of $3,644,78 which he cashed that same month. Reardon admits that he has not returned the payment to SBC but asserts that is because SBC has rejected his offer to return it.

It is undisputed that Reardon hired a bankruptcy attorney in June 2006, approximately nine months before he started working at SBC, to assist him with filing for Chapter 13 bankruptcy. The plaintiff filed for bankruptcy on July 27, 2007. It is further undisputed that when GMAC Mortgage filed foreclosure proceedings on May 31, 2007, it alleged that the plaintiff was five months in arrears.

**Analysis**

Because this case is proceeding pursuant to the court's diversity jurisdiction, the court applies the choice of law rules of the state in which it sits. *Curran v. Kwon*, 153 F.3d 481, 488 (7th Cir. 1998). "Illinois uses the 'most significant contacts' test from the Restatement (Second) of Conflicts § 188 (1971) in all choice-of-law disputes involving contracts, so that the laws of the state with the most significant contacts apply." *BB Syndication Services, Inc. v. LM Consultants, Inc.*, 2011 WL 856646, at *2 (N.D. Ill. Mar. 7, 2011) (*citing Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004)). Neither party disputes that Illinois has the most significant contacts to the release at issue; accordingly, the court will apply Illinois law.

Under Illinois law, "[a] release is a contract and, therefore, is governed by contract law." *Gassner v. Raynor Mfg. Co.*, 948 N.E.2d 315, 325-26 (Ill. App. Ct. 2011) (citation omitted). "A standard principle of contract law is that we will not disturb an unambiguous agreement." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009) (citations omitted). "Where a contractual release is clear and explicit, we must enforce it as written." *Id.* Further, as noted by the Seventh Circuit,

> [a]n employee may waive or release a Title VII claim. For a release affecting a federal right to be valid, it must not only be valid under state law, but it must also be knowing and voluntary. For us to reach this issue, however, the party challenging the release "must come forward with specific evidence sufficient to raise a question as to the validity of the release."

*Hampton v. Ford Motor Co.*, 561 F.3d 709, 716 (7th Cir. 2009) (internal citations omitted).

Reardon asserts that the release is invalid because he did not sign it knowingly and voluntarily. He also asserts the state law defenses of fraud, duress and estoppel.

    A.    <u>Was the release knowing and voluntary under federal law</u>?

According to the Seventh Circuit:

> To determine whether a party entered a release knowingly and voluntarily, we must examine the totality of the circumstances surrounding its execution and consider a number of factors, including, but not limited to:
>
> > (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the

employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part.

*Hampton*, 561 F.3d at 716-17 (citation omitted).

An analysis of the factors in this case indicates that the plaintiff's release was knowing and voluntary. First, Reardon has a bachelor's degree and had worked off and on in the telecommunications field since 1990. While Reardon has not had any legal training, the release is clear and unambiguous and capable of being understood by someone without a legal background. For example, the release specifically identifies Title VII, among other laws, and immediately thereafter states "I intend to give up any rights I may have under these or any other laws with respect to my employment and to the termination of my employment with the Participating Company." The release later states that "[i]n exchange for the Plan Benefits described under Section III . . . . I hereby release the Plan, AT&T and the Participating Company . . . from any claims, liabilities, demands or causes of action, whether for discrimination, breach of contract, or any other claim, including but not limited to claims under Title VII of the Civil Rights Act of 1964 . . . ." These statements are clear and unambiguous.

Reardon does not dispute that he read the agreement or that he was given 70 days to review the release and had 7 days to revoke it after signing. Despite the release's admonition that Reardon seek a lawyer's advice before signing, he did not do so. He contends he could not afford one; however, he was given the opportunity to consult one, and indeed, was encouraged to do so.

While the record does not reflect that Reardon had any input in negotiating the terms of the release, the court does not conclude that this factor outweighs the other factors which point to a knowing and valid waiver by Reardon. As to whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled, nothing in the record indicates that it did not.

Regarding the last factor, whether the employee's release was induced by improper conduct on the defendant's part, Reardon argues that he was misled by representations the defendant made. Specifically, he asserts that he was told by an SBC human resources representative, Gayle Holderfield, that the release did not cover the pending EEOC charge. While SBC denies these statements by Ms. Holderfield, it accepts the allegation as true for purposes of the summary judgment motion. As an initial matter, "fraudulent inducement is not available as a defense when one had the opportunity to read the contract and by doing so could have discovered the misrepresentation." *Pierce v. Atchison, Topeka and Santa Fe Ry. Co.*, 65 F.3d 562, 569 (7th Cir. 1995). As already noted, the language of the release is clear and unambiguous. Not only does it clearly state that Reardon is releasing any and all claims under any laws, it also clearly states that "[a]ny other promises or representations, written or oral, are replaced by the provisions of this document and are no longer effective unless they are contained in this document." Reardon had the opportunity to read the contract and cannot now claim that he was misled by Ms. Holderfield's purported comments. As noted by the *Pierce* court, such reliance is unreasonable as a matter of law. *Id*. at 570.[1]

Considering the totality of the circumstances, the court concludes that Reardon has not come forward with sufficient evidence to raise a question regarding the validity of the release.

| STATEMENT |
| --- |

  B. <u>Has the plaintiff established the state law defenses of fraud, duress, and estoppel?</u>

  *Duress*. To the extent that Reardon claims that SBC's retaliation and discrimination forced him into bankruptcy, which in turn, pressured him into signing the release, this assertion is baseless. As noted by SBC, the plaintiff was over $200,000 in debt just four months after he started employment at SBC in March 2007. Indeed, he admits that he retained a bankruptcy attorney in June 2006, nine months before he began employment at SBC, to assist him in filing for Chapter 13 bankruptcy. Further, on May 31, 2007, less than three months after he started at SBC, GMAC Mortgage began foreclosure proceedings against him alleging that the plaintiff had not made mortgage payments for five months–meaning that he was in arrears on his mortgage before he even started working at SBC. Thus, as Reardon properly concedes in his sur-reply, SBC's conduct did not push him into bankruptcy as that process had already begun before he even started working there. Reardon ended up in bankruptcy on his own accord, not because of anything that SBC did. Simply because Reardon was in a precarious financial situation when the release was presented to him does not establish duress. *Pierce v. Atchison, Topeka and Santa Fe Ry. Co.*, 65 F.3d 562, 569 (7th Cir. 1995) (duress cannot be shown by a "difficult bargaining position or the pressure of financial circumstances") (citation and internal quotation marks omitted). *See also Crawford v. Wilmette Public School Dist. 39*, 2007 WL 257636, at *8 (N.D. Ill. Jan. 25, 2007) ("While Plaintiff may have felt financial pressure that she would be terminated if she did not sign the Agreement, that alone does not negate undisputed facts that she received substantial time to review the Agreement, could revoke her consent if she chose, could speak with an attorney about the Agreement, and admitted that she read the Agreement before she signed it.").

  Reardon, however, continues to argue in his sur-reply that SBC's discriminatory and retaliatory conduct threatened his ability to make his Chapter 13 bankruptcy payments, which caused him to feel pressured to sign the release. Reardon, however, fails to support this assertion with any explanation and, indeed, only a vague citation to his "Affidavit," which is 62 paragraphs long. It is not this court's task to decide which of the paragraphs in the plaintiff's affidavit is relevant to this argument. Accordingly, this argument is rejected.

  *Fraud*. Reardon also asserts that the release and waiver was obtained from him based on fraud. In particular, he asserts that SBC HR representative, Ms. Holderfield, told him that the release did not cover the EEOC claim. However, for the reasons discussed above, the court rejects this argument.

  *Estoppel*. Nor is Reardon's estoppel argument availing. According to Reardon, because SBC continued to defend the EEOC charge even after he had signed the release, one must conclude that the EEOC charge was not covered by the release and SBC is estopped from so arguing. But, as noted by the Seventh Circuit, the EEOC's "enforcement authority is not derivative of the legal rights of individuals even when it is seeking to make them whole." *E.E.O.C. v. Sidley Austin LLP*, 437 F.3d 695 (7th Cir. 2006). *See also EEOC v. Watkins Motor Lines, Inc.*, 553 F.3d 593, 597 (7th Cir. 2009) ("[T]he [EEOC]'s powers are independent of any resolution between employer and employee."). Thus, because the release did not cover SBC's relationship with the EEOC, SBC's continued response to the EEOC does not indicate that the release did not encompass Reardon's Title VII claim or that SBC is estopped from enforcing its rights under the release as against Reardon.

**Conclusion**

  Because the court concludes that the plaintiff has not presented sufficient facts to create a genuine issue of material fact regarding the validity of the waiver he signed, the court grants SBC Global's motion for

**STATEMENT**

summary judgment. The clerk is directed to enter a Rule 58 judgment in the defendant's favor and terminate this case from the court's docket.

---

1. Moreover, the court notes that whether he waived his EEOC charge is ultimately irrelevant as he cannot bring an "EEOC charge" claim. His claim is for discrimination under Title VII, which was expressly released in the waiver.